UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GEORGE F. PIERCE,<br><br>    Plaintiff,<br><br>v.<br><br>PRESIDENT AND FELLOWS OF<br>HARVARD COLLEGE<br><br>and<br><br>FRANCIS D. RILEY, CHIEF OF<br>POLICE<br><br>    Defendants | Civil Action No.<br><br>11-10419 |

## COMPLAINT AND JURY DEMAND

1. This is an action for damages and equitable relief brought by plaintiff George F. Pierce ("Pierce") against his employer, who impaired Pierce' right to make and enforce contracts by intentionally discriminating against him on account of his race and color.

## PARTIES

2. Plaintiff Pierce is an adult African-American male citizen of the United States who resides in Essex County, Massachusetts. Plaintiff is an employee of defendants.

3. Defendant President and Fellows of Harvard College ("Harvard") is a corporation organized under the laws of the Commonwealth of Massachusetts and headquartered in Cambridge, Middlesex County, Massachusetts. Harvard maintains a Police Department ("Department"), in which plaintiff works.

4. Defendant and Francis D. Riley ("Riley" or the "Chief") is Chief of Police in the Department. Riley resides in Lynn, Essex County, Massachusetts.

## JURISDICTION AND VENUE

5. Plaintiff seeks relief pursuant to 42 U.S.C. § 1981.

6. Jurisdiction is conferred on this Court by 28 U.S.C. § 1343(a)(4).

7. Venue in this district is proper under 28 U.S.C. § 1391 because the acts and omissions giving rise to Pierce's claim occurred in the district of Massachusetts.

## FACTS

8. Pierce has worked at Harvard since May 2002 at the rank of patrol officer.

9. Pierce is a career law enforcement professional with eight years' military experience in the U.S. Coast Guard and twenty-one years' experience as a correctional officer in minimum, medium, and maximum security facilities administered by the Massachusetts Department of Corrections. Prior to his position at Harvard, he also worked for a year as a police officer for the Town of Arlington.

10. During the course of Pierce's law enforcement career, he has received many commendations and awards and, until the events here at issue, has never received any form of employee discipline.

11. Throughout Pierce's employment at Harvard, Harvard and the Department have created and maintained a pervasive racially-biased environment within the Department, supported by management, including top management. Some examples include:

    a. Supervisory officers in the Department have routinely made openly racial remarks, including complaining that "n-----s" had "taken over" baseball and basketball, in the context of questioning why the Department "had" to hire more "n-----s"; making

statements such as "I hate blacks" and comments about "chink" food; and referring to a Latino officer as a "spic."

      b.      In April 2004, Pierce and a Caucasian co-worker worked a paid police detail requested by an African-American professor at Harvard. Afterward, Department Captain Linda McCaul ("Captain McCaul") demanded that Pierce write a report explaining his interactions with the professor, because defendants had an apparent concern that the professor allegedly had indicated appreciation that Pierce, as an African-American officer, had been assigned to the detail. Pierce's co-worker was not told to write any such report, and no officers in the Department had ever been asked to write such reports when Caucasian faculty or staff expressed appreciation of Caucasian officers' presence at a detail.

      c.      In June 2004, during a training program on workplace diversity, a member of Department management complained about a minority state trooper's filing of a formal race discrimination complaint.

12.     Since 2002, the Department has promoted nine patrol officers to sergeant positions. None of those nine officers were minorities.

13.     In or about July 2006, the Department posted two openings for the promotional position of Patrol Sergeant, for which Pierce applied. Pierce had been heavily encouraged to apply by several members of the Department's management, based on his record and accomplishments.

14.     Pierce was the only applicant of color for the sergeant positions.

15.     Out of the numerous applicants, Pierce and three other Harvard patrol officers were selected for second interviews, in or about September 2006.

16. The second interviews never occurred. Instead, on or about September 25, 2006, Chief of Staff Kevin Regan ("Chief of Staff Regan") informed the Department by memo that all promotions would be placed on hold pending an in-depth, outside review of Harvard police and security services. According to Chief of Staff Regan's memo, the review would result in staffing recommendations that would be made "over the next few months."

17. At no time between September 25, 2006 and the present did the alleged outside review actually occur.

18. Harvard's actual reason for deciding to cancel the 2006 promotions was to avoid promoting Pierce because of his race.

19. In or about the autumn of 2007, Harvard re-posted three openings for Patrol Sergeant promotions. Pierce timely submitted his application, along with thirteen other internal candidates.

20. After the application deadline had passed, Department management approached one of Pierce's Caucasian coworkers, Julie Davie, who had not applied for the three sergeants positions, to solicit an application from her.

21. Pierce was interviewed for the sergeant promotion on or about December 13, 2007. The interview panel was described as "independent" by Human Resources staff, but it included two ex-colleagues of defendant Riley from his former position as Lieutenant Colonel at the Massachusetts State Police, as well as Captain McCaul.

22. After Pierce's interview, he was informed that he was not selected as one of the six finalists.

23. On or about January 11, 2008, the Department announced that the promotions had gone to three of the finalists. All three were Caucasian, and two of them had significantly less law enforcement experience than Pierce had.

24. In a notable departure from its past practices and from Harvard's usual promotional practices, the Department then announced that it had identified three "additional individuals" for promotion to three further, newly created sergeant positions. All three additional individuals were Caucasian officers, and all had less relevant experience than Pierce did. One of those additional individuals was Julie Davie, whose late application the Department had solicited prior to the January 11 promotion announcement. Another of the individuals, David Burns, had not been among the six finalists.

25. Shortly after the Department's announcements, Pierce contacted Chief of Staff Regan and the Department's Human Resources staff for clarification concerning his candidacy for the three new sergeant positions. Pierce was informed that if he wished to be considered for the positions, he would have to reapply. On January 13, 2008, Pierce submitted a new application.

26. Although the three new sergeant positions nominally were open to applications from the whole Department, Department managers actively discouraged applicants from pursuing the positions, both orally and in writing. Applicants were told that they would need to demonstrate "how [their] qualifications exceed those identified and recommended through the prior process . . . ." Certain applicants were told that it was "too late" to select anyone other than the three individuals already identified as on track for the promotions.

27. Given the Department's indications that it would have been futile to continue to pursue promotion to one of the sergeant positions, on January 21, 2008, Pierce notified the

Department by email that he was withdrawing his name from consideration for the sergeant positions.

28. On or about January 28, 2008, Harvard in fact promoted the three Caucasian finalists that it had previously identified as on track for promotion to the three new sergeant positions.

29. Although Harvard nominally allowed Pierce to apply for promotions in December 2007 and January 2008, in fact, because of Pierce's race, Harvard had no intention of permitting Pierce to be promoted.

30. On or about October 17, 2008, Pierce and other, Caucasian officers in the Department were delayed in arriving to work because of traffic following our attendance at a memorial service for a deceased colleague. Anticipating the traffic delay, Pierce called Sergeant William McNamara ("Sergeant McNamara") in the Department to explain that he would be late. Sergeant McNamara questioned the veracity of Pierce's explanation. Upon information and belief, none of the Caucasian officers who were similarly late were subjected to a questioning of their honesty. After Pierce expressed his frustration over Sergeant McNamara's suggestion that he had not been accurate, the Department initiated discipline proceedings against Pierce. Pierce was ordered to apologize to Sergeant McNamara, and he did so; however, the disciplinary proceedings remain unresolved, over two years after the incident.

31. The Department initiated unfair discipline against Pierce because of his race.

32. This Complaint and Jury Demand is timely filed because on or about December 27, 2010, Pierce and defendants entered into a Tolling Agreement preserving Pierce's right to file, stating:

> In the event Plaintiff commences any suit against Defendants after January 31, 2011, but before March 15, 2011, to prosecute any of his claims herein described

[i.e., that Defendants discriminated against him in the terms and conditions of his employment because of his race and color and/or in retaliation for his opposition to such discrimination], Defendants shall not plead any Timeliness Defense to such suit. For purposes of this paragraph, "Timeliness Defense" means a defense that any applicable statute of limitations expired during the period between July 19, 2010 and March 15, 2011 (the "Standstill Period"); that Plaintiff's filing or pursuit of such claim(s) became barred by laches during the Standstill Period; or that Plaintiff in any other fashion failed to timely file or pursue his claim(s) during the Standstill Period. In the event that any Timeliness Defense would have accrued during the Standstill Period but for the provisions of this paragraph, such Timeliness Defense shall be deemed to have accrued on the day following the last day of the Standstill Period. Plaintiff and Defendants reserve any rights they each possess as of July 19, 2010.

## LEGAL CLAIMS

### Count I—Violation of 42 U.S.C. § 1981
### (Harvard and Chief Riley)

33. The allegations in paragraphs 1 through 32 above are hereby realleged and incorporated by reference.

34. By intentionally aborting its promotion process in 2006 in order to avoid giving Pierce a chance at promotion, defendants have impaired Pierce's right to make and enforce contracts because of his race in violation of 42 U.S.C. § 1981, as amended.

35. As a result of defendants' conduct, Pierce has suffered, and continues to suffer, lost income and other economic losses and emotional pain and suffering, and has incurred attorneys fees. Defendants are liable for all of Pierce's losses.

36. Defendants acted with evil motive and with reckless indifference to Pierce's rights.

### Count II—Violation of 42 U.S.C. § 1981
### (Harvard and Chief Riley)

37. The allegations in paragraphs 1 through 36 above are hereby realleged and incorporated by reference.

38. By intentionally failing to select Pierce for promotion in 2008 and instead awarding promotions to less-qualified, non-African-American employees, defendants have impaired Pierce's right to make and enforce contracts because of his race in violation of 42 U.S.C. § 1981, as amended.

39. As a result of defendants' conduct, Pierce has suffered, and continues to suffer, lost income and other economic losses and emotional pain and suffering, and has incurred attorneys fees. Defendants are liable for all of Pierce's losses.

40. Defendants acted with evil motive and with reckless indifference to Pierce's rights.

### Count III—Violation of 42 U.S.C. § 1981
### (Harvard and Chief Riley)

41. The allegations in paragraphs 1 through 40 above are hereby realleged and incorporated by reference.

42. By initiating unfair disciplinary proceedings against Pierce in 2008, Harvard impaired Pierce's right to make and enforce contracts because of his race in violation of 42 U.S.C. § 1981, as amended.

43. As a result of defendants' conduct, Pierce has suffered, and continues to suffer emotional pain and suffering, and has incurred attorneys fees. Defendants are liable for all of Pierce's losses.

44. Defendants acted with evil motive and with reckless indifference to Pierce's rights.

## RELIEF REQUESTED

WHEREFORE, Pierce prays that this court:

A. Order defendants to promote Pierce to the position of sergeant in the Department, retroactively to September 25, 2006;

B. Award Pierce back pay, prejudgment interest, and damages for all employment benefits he would have received but for defendants' discriminatory acts;

C. Award Pierce compensatory and punitive damages;

D. Award Pierce reasonable attorneys fees;

E. Retain jurisdiction over this matter until such time as this Court is satisfied that the unlawful acts of which Pierce complains have ceased and that defendants have complied with all remedial orders made by this Court; and

F. Award Pierce costs, interest, and such other relief as the Court deems proper.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL COUNTS TRIABLE TO A JURY.**

Respectfully submitted,

GEORGE F. PIERCE

By his attorneys,

Ellen J. Messing
BBO No. 343960
Kevin C. Merritt
BBO No. 667537
Messing, Rudavsky & Weliky, P.C.
50 Congress Street, Suite 1000
Boston, MA 02109
(617) 742-0004

Dated: March 10, 2011