UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-10419-RWZ

GEORGE F. PIERCE

v.

PRESIDENT AND FELLOWS
OF HARVARD COLLEGE, *et al.*

MEMORANDUM OF DECISION

January 13, 2014

ZOBEL, D.J.

Plaintiff George F. Pierce, a patrol officer in the Harvard University Police Department ("HUPD"), sued the President and Fellows of Harvard College and HUPD Chief Francis D. Riley ("defendants"), alleging that in 2006 (Count I) and 2007 (Count II), defendants denied him promotion to sergeant because he is black, in violation of 42 U.S.C. § 1981.[1]  He further contends that defendants did not promote him to detective[2] in 2009 because of his race (Counts IV-VI) and in retaliation for filing a complaint of race discrimination internally and with the Massachusetts Commission Against

---

[1] Plaintiff made the same allegation regarding a third round of hiring for the rank of sergeant, which took place in 2008, but because he voluntarily withdrew his application for the position, he now concedes summary judgment on that claim (Count III).

[2] Detective is not a formal promotion from patrol officer, but it has many of the characteristics associated with a promotion, including a more desirable schedule, improved training opportunities, and increased responsibility.  Pl.'s Statement of Facts ("SOF") ¶ 127.  Defendants do not argue that the "informal" nature of the promotion precludes plaintiff from succeeding on his discrimination and retaliation claims.

Discrimination ("MCAD") (Counts VII-IX), in violation of § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and Mass. Gen. L. ch. 151B.[3]  Presently before me is defendants' motion for summary judgment (Docket # 79).  For the following reasons, the motion is ALLOWED in part and DENIED in part.

## I.    Background[4]

Plaintiff joined HUPD as a patrol officer in May 2002 after a twenty-one year career as a correctional officer and briefly as a police officer.  Third Am. Compl. ("TAC"), Docket # 60, ¶¶ 8-9.  Soon after he joined HUPD, plaintiff perceived a racially biased environment.  Supervisory officers within HUPD made derogatory remarks about racial minorities, including the use of offensive racial slurs.  Id. ¶ 11a.  In April 2004, an African-American professor, who previously had filed a complaint alleging racial profiling, said hello to plaintiff and expressed his appreciation that plaintiff, an African-American officer, was on the force.  Id. ¶ 11b.  That evening, Captain Linda McCaul called plaintiff at home, and in a departure from normal practice, demanded that he write a report about the brief conversation.  Id.  Plaintiff refused.  Pierce Dep., Docket # 89-9, at 116.  In another incident, an HUPD manager expressed displeasure that a minority state trooper had filed a formal race discrimination complaint.  Id. at 89–92.

On October 17, 2008, plaintiff and Sergeant William McNamara got into a verbal exchange after plaintiff was late to work following his attendance at a co-worker's

---

[3]Specifically, plaintiff raises one discrimination claim and one retaliation claim under each of the three above-named statutes.

[4]As I must on a motion for summary judgment, I view the record in the light most favorable to plaintiff, the nonmoving party, and draw all justifiable inferences in his favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

father's wake.  Blanco Dep. II, Docket #89-3, Ex. 29.  McNamara accused plaintiff of insubordination.  In return, plaintiff accused McNamara of singling him out for harsher treatment than his white colleagues, many of whom were late for the same reason.  McNamara sought discipline.  Id.  Captain McCaul investigated the matter and recommended that plaintiff apologize to McNamara, but nothing more.  Id. Ex. 31.  Nevertheless, HUPD scheduled a disciplinary hearing for plaintiff on McNamara's complaint.  Id. Ex. 32.  The investigation was not closed until March 14, 2013, nearly four years later.  Pierce Dep. II, Docket # 83-12, at 36.

On October 21, 2008, plaintiff filed an internal complaint of race discrimination, detailing racially hostile remarks made by HUPD officers and protesting the failure to promote him to sergeant.  Blanco Dep., Docket # 89-1, Ex. 5.  Harvard's Human Resources Department investigated the complaint and concluded that plaintiff was not denied a promotion due to his race or otherwise subject to discrimination.  Scannell Dep., Docket # 89-14, Ex. 8.

Plaintiff filed a charge of race discrimination with MCAD on November 21, 2008.  He contends that shortly thereafter, the attitude of Chief Riley, Captain McCaul, and HUPD Chief of Staff Kevin Regan, toward him sharply changed.  Pierce Dep. II at 68-80.  HUPD officers were angry with him and subjected him to glaring looks.  Id.  Plaintiff withdrew his MCAD charge in February 2009 in order to file suit in this court.  TAC ¶ 34.  After receiving a "right-to-sue" letter from the Equal Employment Opportunity Commission, he did so.  Id. ¶ 43.

**II.    Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the evidence presented would allow a reasonable jury to return a verdict for the nonmovant, summary judgment must be denied. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### III.  Analysis

Plaintiff's discrimination claims arise under three different statutes, but the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), governs each claim. Prescott v. Higgins, 538 F.3d 32, 40 (1st Cir. 2008). First, plaintiff must establish a prima facie case of discrimination, which requires him to show that "(1) he is a member of a protected class; (2) he was qualified for the position he sought; (3) he was subjected to adverse employment action; and (4) the position remained open or was filled by someone else with similar qualifications." Id. If plaintiff successfully does so, the burden shifts to defendant to "produc[e] evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981). This burden is only one of production; the ultimate burden of persuading the trier of fact that defendant intentionally discriminated against the plaintiff always remains with the plaintiff. Id. at 253. If defendant produces a legitimate, nondiscriminatory reason, the burden returns to the plaintiff "to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Id.

Pretext alone, however, is not enough, because plaintiff must also demonstrate a fact issue as to whether defendant was motivated by a discriminatory purpose.[5] St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 519 (1993) ("[I]t is not enough . . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination."); Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 6 (1st Cir. 2000). But plaintiff need not introduce new evidence to do so; the same evidence that plaintiff used to show pretext may also allow the factfinder to infer discrimination. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000). "[T]he ultimate question is not whether the [defendant's] explanation was false, but whether discrimination was the cause of the [adverse employment action]." Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 45 (1st Cir. 2002).

### A.   Count I: 2006 Promotion

In 2006, eight internal candidates applied for two sergeant positions. TAC ¶ 13; Defs.' Supp. Ans. to Interrogs., Docket #83-7, at 4. An interviewing panel comprised of four current sergeants, a civilian manager,[6] and Maribel Blanco, an HUPD human resources administrator, considered the candidates' performance in an interview and police report-correcting exercise, as well as their prior experience and contributions to

---

[5]Until relatively recently, Massachusetts was regarded as following a "pretext only" rule in which an employee who showed that the employer's stated justification was pretextual was entitled to judgment even absent a showing of discriminatory intent. See Blare v. Husky Injection Molding Sys. Bos., Inc., 646 N.E.2d 111, 116 (Mass. 1995), abrogated by Abramian v. President & Fellows of Harvard Coll., 731 N.E.2d 1075, 1085 (Mass. 2000). The decision producing that rule has since been disavowed, and "federal and Massachusetts law are now generally aligned on the pretext issue." Fite v. Digital Equip. Corp., 232 F.3d 3, 7 (1st Cir. 2000).

[6]HUPD is divided into a uniformed side, whose members perform policing functions, and a civilian side, whose members do not. Pl.'s SOF ¶ 5.

HUPD.  Blanco Dep. at 154, Ex. 6.  The panel recommended four finalists, including plaintiff, to Chief Riley, who was responsible for making the final decision.  Id. at 177-182.  Before making that decision, however, Chief Riley abruptly canceled the process; HUPD promoted no one to sergeant in 2006.  Id. Ex. 8.

Assuming plaintiff has demonstrated a prima facie case,[7] defendants offer three legitimate, nondiscriminatory reasons for his non-promotion.  First, they say Chief Riley was informed that Sergeant Robert Kotowski, a member of the hiring panel, may have leaked the interview questions to applicant Kevin Healy.  Defs.' Mem. in Supp., Docket # 82, at 7.  Second, they cite Chief Riley's concern that the panel's deliberations may have been tainted by sex discrimination after he learned that the panel did not advance Amy DiVirgilio, a high-scoring woman candidate, to the next round.  Id.  Finally, they point to a then-upcoming Harvard development project in Allston that had the potential to change HUPD's staffing needs.  Id.  Defendants have met their burden of providing a legitimate explanation for their actions.  See St. Mary's Honor Ctr., 509 U.S. at 509 (stating defendant's burden regarding legitimate, nondiscriminatory reasons "can involve no credibility assessment").  Plaintiff must show that a reasonable jury could

---

[7]Defendants argue plaintiff cannot satisfy the third and fourth prongs of the prima facie case analysis because HUPD did not reject him in favor of another similarly qualified applicant.  In other words, according to defendants, because HUPD canceled the process and did not fill the open positions, plaintiff cannot demonstrate he was rejected in favor of anyone.  Defs.' Mem. in Supp., Docket # 82, at 6 (citing Zolotarevsky v. Gen. Elec. Co., 862 F. Supp. 859, 663 (D. Mass. 1994)).  Zolotarevsky does not state that a plaintiff is per se unable to establish a prima facie case when his or her employer administratively cancels the hiring process.  Rather, the court examined the facts of the case and concluded that the plaintiff could not demonstrate a prima facie case because, due to budget concerns and staffing needs, the position did not remain open following his rejection.  Id.  Other courts have found that cancelling a hiring process to avoid hiring or promoting a person of color can amount to an adverse employment action.  See Evans v. Sebelius, 716 F.3d 617, 620-21 (D.C. Cir. 2013); Nwaebube v. Emp't Sec. Comm'n, No. 5:09-CV-395-F, 2011 WL 4072893, at *2 (E.D. N.C. Sept. 13, 2011).  Mere cancellation, without more, does not defeat a plaintiff's discrimination claim.

view defendant's explanation as false and suggestive of racial animus.

A reasonable jury could infer as much from the record. Riley informed Blanco that Kotowski should not be disciplined for the alleged leak. Blanco Dep. at 170–172. But if he was concerned about the integrity of the interviews, Riley could simply have removed Kotowski from the panel and terminated Healy's candidacy. Riley's apparent belief that the leak was so severe as to warrant wholesale cancellation of the hiring process, yet so innocuous as to require no discipline for those who broke the rules, is puzzling. Inconsistent explanations for an adverse employment action can be evidence of pretext. Billings v. Town of Grafton, 515 F.3d 39, 56 (1st Cir. 2008); see Antonucci v. Life Care Ctrs. of Am., Inc., No. 06-108ML, 2008 WL 417675, at *7 (D. R.I. Feb. 13, 2008) ("The employer's reasoning can be inconsistent . . . in that an explanation does not make sense in light of the circumstances."). There is also reason to question defendants' proffered explanation of sex discrimination. Blanco, a panel member, testified in her deposition that she perceived no improprieties in the panel's consideration of the candidates. Blanco Dep. at 179. Kotowski agreed. Affidavit of Robert Kotowski, Docket # 89-19, at ¶¶ 13-16. Furthermore, defendants do not explain why the Allston expansion project would cap or reduce staffing needs and thereby require HUPD to cancel planned promotions. Nor do defendants identify any changes in their understanding of Harvard's security needs during the eight months between the time when Riley canceled the interviews (September 2006) and the time when HUPD resumed hiring new sergeants (May 2007). These doubts are sufficient to raise a fact issue as to pretext.

Finally, plaintiff has raised a fact issue regarding discriminatory intent. A jury could infer discrimination from defendants' inconsistent explanations for the cancellation. Reeves, 530 U.S. at 147. Moreover, seven officers stated that they had never been contacted at home for anything other than an emergency or an immediate scheduling matter during their tenure at HUPD. Pl.'s SOF ¶ 20. Yet Captain McCaul called plaintiff at home seeking an urgent explanation of plaintiff's seemingly benign encounter with an African-American professor, and subjected him to hostile treatment after he refused. Pierce Dep. II at 195-99. A record of disparate treatment and unprofessional behavior directed at a plaintiff may constitute evidence of discriminatory intent. Thomas v. Eastman Kodak Co., 183 F.3d 38, 64-65 (1st Cir. 1999). Plaintiff has met his burden. Summary judgment is denied as to Count I.

### B.   Count II: 2007 Promotion

Three sergeant positions and one detective sergeant position were available in 2007. Blanco Dep. II at 14-15. Unlike the prior year, in 2007 the interviewing panel was comprised entirely of non-HUPD personnel, save for Captain McCaul. Riley Dep. II, Docket # 89-12, at 246, 277-78. The panel did not consider prior experience or the report-correcting exercise. Blanco Dep. at 214-15. They ranked candidates based only on the candidates' resumes and interviews. Id.

Defendants concede that plaintiff has established a prima facie case and proffer two legitimate reasons for plaintiff's non-promotion. First, they state plaintiff was less qualified than the officers who ultimately got the job. Two of the three officers promoted to sergeant had advanced degrees, and each promoted officer had a longer HUPD

tenure than plaintiff. Defs.' SOF ¶¶ 105, 109, 113. Second, they claim plaintiff interviewed poorly. Riley Dep. II at 255-56. These factors led the panel to rank plaintiff fifteenth out of eighteen candidates. Defs.' Mem. in Supp. at 11.

Plaintiff identifies several supposed flaws in the interview process as evidence of pretext. The interviewing panel members had personal connections to Chief Riley and included Captain McCaul, who had been hostile to plaintiff. The basis for the hiring decisions was narrow in scope because it omitted experience and the report-correcting exercise. Finally, HUPD disfavored external candidates, who would have diversified the hiring pool if included. The problem with these supposed flaws is that they are entirely speculative. Plaintiff acknowledged his poor interview, Pierce Dep. at 211, and plaintiff cites no evidence to suggest that incorporating the results of a report-correcting exercise or including external candidates would have improved plaintiff's standing. Courts do not second-guess hiring decisions absent evidence of irrationality or discriminatory animus. Lehman v. Prudential Ins. Co. of Am., 74 F.3d 323, 328 (1st Cir. 1996); Ahmed v. Napolitano, 909 F. Supp. 2d 37, 48 (D. Mass. 2012). Here, there is none. Because plaintiff has failed to raise a triable fact issue as to pretext, defendants' motion for summary judgment on Count II is allowed.

### C. Counts IV-VI: 2009 Promotion (Discrimination)

In 2009, eleven candidates applied for two available sergeant positions. Defs.' Supp. Ans. to Interrog. 2(e). A panel composed of Sergeant Martin Fay, Blanco, and McCaul asked each candidate a set of questions in a ten-minute interview. Defs.' Ans. to Interrogs. 4(4), 17. The panel selected Christos Hatzopoulos, a white man, and

James Lawson, a black man, and forwarded their names to Chief Riley, who approved their appointments. Id. 2.

Defendants claim plaintiff was not promoted because the panel determined he was less qualified than Hatzopoulos and Lawson.[8] Hatzopoulos served as an HUPD detective from September 2006 to June 2007, and again from March 2008 to September 2008. He also participated in detective training in 2008. Hatzopoulos Dep., Docket # 83-16, at 13–16. Lawson performed detective work during the seven years he served as an Investigator with the Somerville Housing Authority Police Department before he joined HUPD. Defs.' SOF ¶ 195.

Plaintiff responds that this reason is pretextual because defendants pre-selected Hatzopoulos for promotion. Hatzopoulos was reassigned from detective to patrol officer in September 2008 because he drew his weapon in Harvard Yard but failed to report it. Hatzopoulos Dep. at 53-55. Plaintiff claims Chief Riley promised Hatzopoulos that he would be reinstated as detective within a short time, and by promoting Hatzopoulos, Chief Riley kept his promise. Plaintiff also points to the exceptionally abbreviated selection process as evidence of pretext. Each interview lasted only ten minutes, the interviews all occurred on a single day, and the panel announced the finalists that same

---

[8]Defendants also contend that plaintiff cannot establish a prima facie case of discrimination because HUPD promoted Lawson, another black man. According to defendants, a plaintiff cannot demonstrate a prima facie case where, as here, a member of his same class is promoted because he cannot show that others outside his protected class were treated more favorably. Defs.' Mem. in Supp. at 18-19. The First Circuit has held that the fact that an employer promoted others in the same protected class as plaintiff is information the jury can consider, but is not dispositive. Sinai v. New Eng. Tel. & Tel. Co., 3 F.3d 471, 474 (1st Cir. 1993). Therefore, Lawson's hiring does not entitle defendants to summary judgment. Plaintiff has established a prima facie case.

day.[9]  Pierce Dep. at 60–63.

Plaintiff has raised sufficient evidence to create a genuine fact dispute regarding pretext.  Chief Riley's promise to reinstate Hatzopoulos casts doubt on defendants' proffered explanation because it suggests that plaintiff's non-promotion was not based on his purportedly inferior qualifications.  Although evidence of preselection alone is insufficient to prevail on a discrimination claim, see Fausto v. Welch, No. 89-1542-WF, 1994 WL 568846, at *5 (D. Mass. Oct. 12, 1994), aff'd, 64 F.3d 654 (1st Cir. 1995), it may be relevant to pretext.  Morley v. New Eng. Tel. Co., No. 82-1051-2, 1987 WL 9910, at *7 (D. Mass. Apr. 14, 1987).  The one-day selection process provides further evidence.  Brennan v. GTE Govt. Sys. Corp., 150 F.3d 21, 29 (1st Cir. 1998) ("Deviation from established policy or practice may be evidence of pretext.").  Six HUPD officers testified that HUPD hiring typically takes at least one week, and five officers testified they have never seen a selection process completed in a single day.  Pl.'s SOF ¶ 133.  This evidence may not be overwhelming, but it is enough to raise a fact issue as to whether HUPD's reason for not promoting plaintiff is unworthy of credence.  See Lattimore v. Polaroid Corp., 99 F.3d 456, 467 (1st Cir. 1996) (concluding, in a case involving deviation from established hiring procedures, that "although the evidence of pretext is thin, disputed and susceptible to varying interpretations, it is sufficient to create a jury question").

The same is true with respect to discriminatory intent.  As in the 2006 promotions,

---

[9] In fact, the Third Amended Complaint states that Blanco called plaintiff approximately ninety minutes after his interview to inform him that he had not been selected for the position.  TAC ¶ 38.

11

a jury could infer discrimination from the abnormalities in the selection process. And plaintiff's filing of the internal complaint and MCAD charge may have aggravated the parties' already tense relationship. Viewing the record in the light most favorable to plaintiff, and considering the evidence of the prima facie case and pretext together with defendants' strained interactions with plaintiff regarding issues of race, permits an inference that defendant acted with discriminatory intent. See Che v. Mass. Bay Transp. Auth., 342 F.3d 31, 40 (1st Cir. 2003); cf. DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997) ("[T]rial courts should use restraint in granting summary judgment where discriminatory animus is in issue.") (internal quotation and citation omitted).

### D.    Counts VII–IX: 2009 Promotion (Retaliation)

Plaintiff also claims that defendants denied him the 2009 promotion to detective and reassigned him from cruiser patrol to foot patrol in retaliation for filing the internal complaint and MCAD charge. The *McDonnell Douglas* analysis applies to retaliation claims under § 1981, Title VII, and Mass. Gen. L. ch. 151B.[10] Noviello v. City of Boston, 398 F.3d 76, 88 (1st Cir. 2005). To make out a prima facie case of retaliation, plaintiff must show (1) he engaged in protected conduct; (2) he suffered an adverse employment action; and (3) the adverse action was causally connected to the protected conduct. Fantini v. Salem State Coll., 557 F.3d 22, 32 (1st Cir. 2009).

Defendants concede that the internal complaint and MCAD charge are protected

---

[10] The Supreme Court has explained the difference between the substantive and the anti-retaliation provisions of the statutes: "The substantive provision seeks to prevent injury to individuals based on who they are, *i.e.*, their status. The anti-retaliation provision seeks to prevent harm to individuals based on what they do, *i.e.*, their conduct." Burlington N. & Sante Fe Ry. Co. v. White, 548 U.S. 53, 63 (2006).

conduct, and plaintiff can demonstrate that the denial of the promotion is an adverse employment action because (1) he applied for the position; (2) which was vacant; and (3) for which he was qualified but not hired. Velez v. Janssen Ortho, L.L.C., 467 F.3d 802, 807 (1st Cir. 2006). Defendants contest the causal connection between the protected conduct and the adverse employment action. As support, they point to the university investigation which concluded plaintiff was not denied a promotion because of his race. Scannell Dep. Ex. 8.

Plaintiff has established sufficient evidence of a causal connection for two reasons. First, the temporal proximity between the filing of the report and the denial of the promotion supports a connection. DeCaire v. Mukasey, 530 F.3d 1, 19 (1st Cir. 2008). Second, plaintiff was the subject of an expanded disciplinary investigation despite Captain McCaul's recommendation that he only apologize to Sergeant McNamara. At least one officer stated that he had never seen HUPD hold a disciplinary hearing despite a recommendation of no discipline. Affidavit of George White ¶ 16. Because HUPD did not follow its common practice with respect to plaintiff, he can arguably show he was subjected to disparate treatment between the time of the protected activity and the adverse employment action. Che, 342 F.3d at 39. Plaintiff has met his "relatively light burden" of establishing a prima facie case. Mariani-Colon v. Dep't of Homeland Sec. ex rel. Chertoff, 511 F.3d 216, 224 (1st Cir. 2007).

Defendants claim they had legitimate reasons to place plaintiff on foot duty and not promote him. Plaintiff crashed a department-issued van into the side wall of a garage and damaged the van. Chief Riley testified that reassignment to foot patrol is a

common response when officers are at fault in automobile accidents.  Riley Dep. II at 385.  Indeed, the record shows that several officers, white and black alike, were similarly treated when they were caused a car accident.  Defs.' Ans. to Interrog. 10(b).  Therefore, plaintiff's temporary assignment to foot patrol does not appear retaliatory.

As for the non-promotion, defendants again contend the successful applicants were better qualified for the position than plaintiff.  But again, the evidence in the record supports a reasonable inference that defendants' reason is pretextual.  Plaintiff noticed a marked change in Chief of Staff Regan's and Captain McCaul's behavior towards him after he filed the complaint and charge.  Pierce Dep. at 68-80.  Chief Riley extended the disciplinary investigation regarding the 2008 confrontation with Sergeant McNamara.  And most significantly, the record shows ample evidence of HUPD retaliation against others who have reported concerns regarding department management and filed affidavits in support of discrimination cases brought by HUPD officers.  See Dartmouth Rev. v. Dartmouth Coll., 889 F.2d 13, 19 (1st Cir. 1989) ("[E]vidence of past treatment toward others similarly situated can be used to demonstrate intent in a race discrimination suit."), overruled on other grounds by Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61 (1st Cir. 2004);  Affidavit of Maureen Morrison, Docket # 89-21, at ¶ 4 (stating Chief Riley "stopped communicating with [her] completely" after she filed an affidavit in support of a co-worker's case against the HUPD); Affidavit of James Pignone, Docket # 89-23, at ¶¶ 16-17 (stating he was reassigned to an inflexible schedule of evening shifts after expressing dissatisfaction with HUPD management during a university review); Kotowski Aff. ¶ 24 (recalling he

was reassigned from Team Leader to the "less desirable and prestigious" Detail Sergeant following similar complaints). The facts give rise to at least a fair inference of retaliation based on racial animus, and that is enough for plaintiff to survive defendants' motion.

**IV.   Conclusion**

Defendants' Motion for Summary Judgment (Docket # 79) is ALLOWED with respect to Counts II and III and DENIED with respect to Counts I and IV-IX.

Plaintiff's Motion to Strike Hearsay and Opinion Evidence From Summary Judgment Record (Docket # 90) is DENIED.

Plaintiff's Motion to Exclude Certain Unattributed Assertions By Defendants From Consideration (Docket # 100) is DENIED.

Plaintiff's Motion to Impound His Corrections to the Summary Judgment Record (Docket # 109) is ALLOWED without objection.

|  |  |
|---|---|
|    January 13, 2014    |    /s/Rya W. Zobel    |
| DATE | RYA W. ZOBEL<br>UNITED STATES DISTRICT JUDGE |